IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| INDIANA PROTECTION AND ADVOCACY SERVICES, ) ) ) Plaintiff ) ) v. ) ) INDIANA FAMILY AND SOCIAL SERVICES ) SERVICES ADMINISTRATION, MITCH ) ROOB, in his official capacity as Secretary of the ) Family and Social Services Administration; ) CATHY BOGGS; in her official capacity as ) Director of the Division of Mental Health and ) Addiction; PAUL BROCK, in his official capacity ) as Superintendent of Logansport State Hospital, ) ) Defendants ) | CIVIL ACTION NO. **1 :07 -cv-1134-SEB-WTL** |

## COMPLAINT SEEKING INJUNCTIVE AND DECLARATORY RELIEF

COMES NOW the Plaintiff, by counsel, and for its complaint against Defendants, states and alleges as follows:

1. Plaintiff, Indiana Protection and Advocacy Services, (IPAS) is a federally-funded state agency with a statutory mandate to advocate for the legal and civil rights of individuals with mental illness and other disabilities. This action seeks injunctive and declaratory relief pursuant to 42 U.S.C.A. § 10807 to prevent Mitch Roob ("Roob") in his official capacity as Secretary of the Family and Social Services Administration; Cathy Boggs ("Boggs") in her official capacity as Director of the Division of Mental Health and Addiction; and Paul Brock ("Brock") in his official capacity as Superintendent of Logansport State Hospital, from restricting full, complete, and meaningful access by Indiana Protection and Advocacy Services to treatment, programming, residential and common areas of Logansport State Hospital accessible to the residents therein.  Such access is mandated by the Protection and

Advocacy for Individuals with Mental Illness Act ("PAIMI Act"), 42 U.S.C. § 10801. *et seq.*, and other applicable state and federal laws.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367 and 2201, because Plaintiff is seeking redress of the deprivation, under State and Federal Law, statute, ordinance or usage, of its statutory rights, privileges and immunities secured by Acts of Congress.

3. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## PARTIES

4. Plaintiff, Indiana Protection and Advocacy Services ("IPAS"), is an independent state agency, mandated by Congress through 42 U.S.C. 10801 and empowered by the legislature of the State of Indiana in Indiana Code § 12-28-1-12 to provide protection and advocacy services to individuals with mental illness. As part of its mandate, IPAS is authorized to investigate incidents of abuse, neglect, and civil rights violations of persons with mental illness within the State of Indiana.

5. Defendant Roob is being sued in his official capacity as an employee of the Family and Social Services Administration ("FSSA"). Defendant Boggs is being sued in her official capacity as an employee of the Division of Mental Health and Addiction ("DMHA"), a division under FSSA. Defendant Brock is being sued in his official capacity as an employee of Logansport State Hospital, which is administered by DMHA.

6. At all relevant times hereto, Defendants have operated as representatives of a public entity and within the scope of their public employment.

## STATEMENT OF FACTS

7. 42 USC 10801 et seq., known as the Protection and Advocacy for Individuals with Mental Illness Act (federal PAIMI Act), establishes protection and advocacy systems, stating:

> "(b) The purposes of this chapter are -
>
> (1) to ensure that the rights of individuals with mental illness are protected; and

2

>   (2) to assist States to establish and operate a protection and advocacy system for individuals with mental illness which will –
>
>   (A)  protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitution and Federal and State statutes; and
>
>   (B)  investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred."

In pertinent part, "individual with mental illness" is defined in 42 U.S.C. §10802 as an "individual . . . who is an inpatient or resident in a facility rendering care or treatment." And a "facility" may include but is not limited to "hospitals, nursing homes, community facilities for individuals with mental illness, board and care homes, homeless shelters, and jails and prisons."

8. IPAS qualifies as a "system" as defined by the PAIMI Act, 42 U.S.C. §10802 and its authority under the PAIMI Act extends to Logansport State Hospital, which is a "facility" as defined by the PAIMI Act, 42 U.S.C. §10802.

9. IPAS has been given reasonable unaccompanied access to residents of state treatment facilities at all times necessary to conduct a full investigation of an incident of abuse or neglect.  42 C.F.R. 51.42(b).

10. IPAS has been given authority to access all public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to the residents. 42 C.F.R. § 51.42.

11. Federal law requires that IPAS be given prompt access to state treatment facilities and to the residents therein, specifying that "[a]ccess to facilities, records or residents shall not be delayed or denied without the prompt provision of written statements of the reasons for the denial." 42 C.F.R. § 51.43.

12. 42 C.F.R. § 51.31 mandates that IPAS will have a presence in facilities such as Logansport State Hospital as follows:

> "(c) Wherever possible, the program should establish an on-going presence in residential mental health care or treatment facilities and relevant hospital units."

13. Subsection (d) states:

> "(d) Program activities should be carried out in a manner which allows program staff to:
>
> (1) Interact regularly with those individuals who are current or potential recipients of protection and advocacy services;
> (2) Interact regularly with staff providing care or treatment."

14. Logansport State Hospital serves primarily as a mental health treatment facility as defined by the PAIMI Act. However, the Jayne English unit contained within Logansport State Hospital serves individuals whose primary diagnosis is that of developmental disability. Individuals receiving care and treatment as residents of a developmental treatment center fall within the protections of Developmental Disabilities Assistance and Bill of Rights Act of 2000 (42 U.S.C. §§ 15041-15045, "The DD Act") Since abuse and neglect can and does occur on developmental treatment units as well as units treating individuals with mental illness, the DD Act grants representatives of IPAS and other protection and advocacy organizations broad access to developmental disability treatment facilities and the residents therein. This access is guaranteed in 45 C.F.R. § 1386.22 which states:

> "(f) Access to Facilities and Individuals with Developmental Disabilities--A [Protection and Advocacy] system shall have reasonable unaccompanied access to public and private facilities which provide services, supports, and other assistance for individuals with developmental disabilities in the State when necessary to conduct a full investigation of an incident of abuse or neglect under section 142(a)(2)(B) of the

Act. This authority shall include the opportunity: to interview any facility service recipient, employee, or other person, including the person thought to be the victim of such abuse, who might be reasonably believed by the system to have knowledge of the incident under investigation; and to inspect, view and photograph all areas of the facility's premises what might be reasonably believed by the system to have been connected with the incident under investigation.

(g) Under section 142(a)(2)(H) of the Act, the system and all of its authorized agents shall have unaccompanied access to all residents of a facility at reasonable times, which at a minimum shall include normal working hours and visiting hours, for the purpose of:

> (1) Providing information and training on, and referral to, programs addressing the needs of individuals with developmental disabilities, and the protection and advocacy services available from the system, including the name, address, and telephone number of the system and other information and training about individual rights; and
>
> (2) Monitoring compliance with respect to the rights and safety of service recipients."

## COUNT 1

15. On or about July 27, 2007, IPAS employee Amy Penrod-Spicer ("Spicer") initiated an investigation into allegations of abuse and neglect of S.C. ("Client 1") and D.O. ("Client 2"), both are residents of the Jayne English Treatment Center contained within Logansport State Hospital. Spicer entered the locked Jayne English Treatment Center using a key she had been provided at the reception desk of Logansport State Hospital. Shortly after entering the Jayne English Treatment Center, she was approached by facility staff who informed her that she was not allowed on the unit and must wait in the hallway. After leaving the unit, Spicer was approached by the Jayne English Service Manager, Paul Wright ("Wright") who informed Spicer that the Senior Executive Board of Logansport State Hospital informed him that IPAS staff are not allowed on the unit. Wright also informed Spicer that any conversations she has with residents must occur off of the treatment unit. Wright specifically stated that he was denying Spicer physical access to the treatment unit.

Wright then offered to escort Spicer to the Superintendent's (Brock) office for further discussion. Brock informed Spicer that Wright had denied Spicer access to the treatment unit at Brock's direction. These restrictions on IPAS activities were then memorialized in the minutes of the Logansport State Hospital Human Rights Committee meeting as follows:

"Amy Spicer [IPAS Advocate] is required to submit a request to meet with a resident at least 24 hours in advance. In order to meet with a resident, she must knock on the unit door and request to speak to the particular patient. She and the patient are then escorted by hospital staff to an interview room. Mr. Brock followed up with Kathy Gregory [Legal Counsel for Defendant] and the hospital is upholding procedures and will continue to do so in the same manner."

## COUNT 2

16. On or about August 31, 2007, IPAS employee Spicer traveled to Logansport State Hospital and attempted to enter onto the Dodds 2 East treatment unit for the purpose of observing the unit and monitoring the care and treatment of the residents therein. Spicer attempted to access the treatment unit at approximately 1:00 p.m. Eastern time. Spicer was denied entrance onto the treatment unit by facility staff, and she was informed that she would not be allowed to enter the treatment unit without permission from the Superintendent's office.

## DEPRIVATION OF RIGHTS UNDER 42 U.S.C. § 1983

17. Plaintiff IPAS restates each and every allegation contained in Paragraphs 1 through 16 as though fully set forth herein.

At all times alleged, Defendants administered a policy of restricting access by IPAS staff to the treatment units at Logansport State Hospital and to the residents therein.

The PAIMI act and its implementing regulations authorizes IPAS to have full access to all areas of the treatment facility that are accessible to the facility residents, and to have reasonable access to the residents themselves and to otherwise perform its statutory mandate to protect individuals with mental illness from abuse and neglect.

The Developmental Disabilities Assistance and Bill of Rights Act of 2000 and its implementing regulations authorize IPAS to have full access to all areas of facilities providing treatment to individuals diagnosed with a developmental disability.

Defendants, in their policies and practices under color of law, custom and usage, deny IPAS from carrying out its statutory mandate of investigating, detecting, and preventing abuse and neglect of individuals with mental illness as required by: 42 U.S.C. §§10805 and 10806 and the implementing regulations 42 C.F.R. §51.4. Defendants have further prevented IPAS from carrying out its statutory mandate of investigating, detecting, and preventing abuse and neglect of individuals diagnosed with developmental disability as required by 42 U.S.C. §§ 15041-15045 and the implementing regulations found in 45 C.F.R. § 1386 .22, thus depriving Plaintiff IPAS of its federal rights in violation of 42 U.S.C. § 1983.

Plaintiff IPAS will suffer irreparable harm to its federal rights absent injunctive relief being granted by this Court.

Only review by this Court of Defendants continuing violations of federal law and the issuance of injunctive relief will compel Defendants to provide access to the treatment, program, and residential areas of its treatment facilities and reasonable access to the residents therein, in order for Plaintiff to fulfill and perform its statutory mandate of protection and advocacy for individuals with mental illness and developmental disabilities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

1. That this Court exercise jurisdiction over this action.

2. That this Court declare that Defendant has violated Plaintiff's legal rights under the Protection and Advocacy for Individuals with Mental Illness Act and the Developmental Disabilities Assistance and Bill of Rights Act by denying Plaintiff reasonable access to the areas within the facility that are accessible to the residents as guaranteed by the PAIMI and DD Acts and their implementing regulations.

3. That this Court enjoins Defendant to allow IPAS unaccompanied access to the treatment, programming, and residential areas of their treatment facilities without advance notice and at any reasonable time during and after business hours.

4. That this Court award reasonable attorney fees and costs to Plaintiff IPAS pursuant to 42 U.S.C. § 1988.

5. That this Court award Plaintiff any other relief that the Court deems just and equitable.

Respectfully submitted this ___7th___ day of September, 2007.

I affirm, under the penalties for perjury, that the foregoing representations are true.

_____
Milo G. Gray, Jr.
Attorney No.: 7268-49

_____
Debra J. Dial
Attorney No.: 19779-49

_____
Gary W. Ricks
Attorney No.: 18246-49

_____
David R. Smith
Attorney No.: 14658-49

Attorneys for Plaintiff
Indiana Protection and Advocacy Services
4701 North Keystone Avenue
Suite 222
Indianapolis, Indiana 46205
(317) 722-5555

8